OPINION
{¶ 1} Defendant-appellant James C. Hanning appeals the March 29, 2001 Judgment Entry of the Perry County Court of Common Pleas which, pursuant to a jury verdict, found appellant guilty of burglary, attempted burglary, and theft of a firearm, and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 18, 2000, Steve Boyer and Leslie Davis arrived home from work to find someone had broken into their home. Mr. Boyer testified the side door to the garage had been "busted up, as if it had been kicked." Tr. at 148. Mr. Boyer testified the door was not in that condition when he left for work that morning around 5:30 a.m.
 {¶ 3} An inspection of the home revealed various guns, two gold necklaces, a VCR, a camcorder and a direct television satellite receiver were missing. Both Mr. Boyer and Ms. Davis testified no one had permission to be in the home that day, nor did anyone have permission to remove the missing items.
 {¶ 4} Deputies Drake and Tysinger of the Perry County Sheriff's Office inspected the home on the date of the incident and observed the damage to the door. The deputies found a footprint just below the door knob. Mr. Boyer told the police appellant was a former friend and appellant had been to his home in February or March of 2000. Mr. Boyer indicated appellant would have known Mr. Boyer owned the guns which were stolen because the two had hunted together in the past.
 {¶ 5} Kim Kesman, a neighbor of Mr. Boyer, was having her driveway paved on the day of the incident. She was outside watching the work on the driveway when she observed a small red car drive down the road past her driveway and Mr. Boyer's driveway. Shortly thereafter, the red car returned and drove into the Boyer driveway. Ms. Kesman testified there were two men in the car. Ms. Kesman was not certain whether both men got out of the car or whether one of the men got out of the car. However, she did observe someone carrying items from the Boyer residence and placing them in the red car. Ms. Kesman indicated the items looked like blankets or clothing. Ms. Kesman noticed the car because she did not think it belonged there. As the car left, the man doing the paving wrote the license plate number down and gave it to Ms. Kesman. Ms. Kesman told police she got a good look at the men. At trial, she identified appellant as one of the men in the car.
 {¶ 6} Richard Neff, the man supervising the paving job, also testified at trial. Mr. Neff also saw the red car drive by the home before returning and pulling up into the Boyer's driveway. While the car was parked by the garage, he observed two men carrying things from the home to the car. Mr. Neff was unable to tell what was being loaded into the car. Because Ms. Kesman found the car to be suspicious, Mr. Neff payed attention to it as it left and wrote down the license plate number. Mr. Neff was also able to get a good look at the men, and at trial, he identified appellant as the driver of the car.
 {¶ 7} Deputy James McCall, an investigator for the Perry County Sheriff's Office, became involved in the investigation the day after the incident. Mr. Boyer advised Deputy McCall he suspected appellant as the perpetrator. Based upon this information, the deputy compiled a photo lineup consisting of six photographs, one of which was appellant. Deputy McCall showed the photo array to Ms. Kesman four days after the incident and to Mr. Neff ten days after the incident. He advised each of them that one of the subjects in the photo array could be one of the suspects. Both Ms. Kesman and Mr. Neff picked appellant out of the photo array.
 {¶ 8} On October 2, 2000, Joe Fiore and Johnathan T. Johnson, were driving down a road which runs in front of Mr. Fiore's home. As the two approached Mr. Fiore's home, they observed two men on Mr. Fiore's front porch. One of the men was kicking the front door. As the Fiore vehicle approached, the two men ran from the porch to a small pickup truck which had been backed into Mr. Fiore's driveway. Mr. Fiore attempted to stop the vehicle as it exited the driveway, however, he was unable to do so. He immediately pursued the pickup truck and called the sheriff's office for assistance on his cell phone. Mr. Fiore pursued the truck until it was ultimately stopped by police officers. Mr. Fiore did not have the fleeing vehicle in view during the entire pursuit, however, he was able to relay to the sheriff's office dispatcher the roads the fleeing vehicle was using. Mr. Fiore testified the vehicle fleeing was speeding and ran at least one stop sign.
 {¶ 9} At trial, Mr. Fiore identified appellant as the man who was kicking in the front door to his home, and the man who subsequently drove the pickup truck as it fled from his home. Mr. Fiore testified he observed a footprint on the front door to his home and that the deadbolt in the door had been broken.
 {¶ 10} When the deputies stopped the pickup truck, appellant was driving the truck. The license plate of the truck matched the license plate given to the deputies when Joe Fiore called in his report of the events during the pursuit.
 {¶ 11} On October 25, 2000, the Perry Grand Jury indicted appellant with one count of attempted burglary, in violation of R.C.2923.02(A) and 2911.12(A)(2); one count of burglary, in violation of R.C. 2911.12(A)(2); and theft of a firearm, in violation of R.C.2913.02(A)(1). The indictment alleged the first count took place on October 2, 2000 (the Fiore incident), and the second and third counts were alleged to have occurred on September 18, 2000 (the Boyer incident).
 {¶ 12} On October 27, 2000, the trial court appointed Attorney Steve Schnitke to represent appellant. On January 12, 2001, Attorney Schnitke filed a motion to withdraw as counsel as appellant had retained other trial counsel. On January 16, 2001, Attorney Robert Miller filed his notice of appearance.
 {¶ 13} The matter proceeded to a jury trial on February 12, 2001. At the conclusion of the evidence, the jury returned verdicts of guilty on all three counts and the matter was continued for sentencing. On March 26, 2001, the trial court sentenced appellant to serve a term of three years for count one, four years for count two, and fifteen months for count three. The trial court ordered the sentences to be served consecutively.
 {¶ 14} Appellant filed a pro se notice of appeal from his conviction and sentence. Subsequently, the trial court appointed appellate counsel to represent appellant. Unfortunately, no brief was ever filed on appellant's behalf, and the record was transmitted without the trial transcript. On July 27, 2001, this Court dismissed appellant's direct appeal for want of prosecution.
 {¶ 15} On October 12, 2001, appellant filed an application for reopening pursuant to App.R. 26(B). In a November 20, 2001 Judgment Entry, this Court granted appellant's application. The trial court appointed new appellate counsel. Appellant now appeals the March 29, 2001 Judgment Entry which sentenced him on the convictions. Appellant assigns the following errors for our review:
 {¶ 16} "I. MR. HANNING WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 17} "II. MR. HANNING'S CONVICTIONS FOR BURGLARY AND THEFT, AS ALLEGED IN COUNTS TWO AND THREE OF THE INDICTMENT, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; SECTION 16, ARTICLE I, OHIO CONSTITUTION.
 {¶ 18} "III. MR. HANNING WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, IN CONTRAVENTION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 I. {¶ 19} In appellant's first assignment of error, he maintains he was deprived to his right of effective assistance of trial counsel. We disagree.
 {¶ 20} The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by Ohio in State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different.
 {¶ 21} A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley,42 Ohio St.3d at 143, 538 N.E.2d 373 (citing Strickland, 466 U.S. at 697.) We note that a properly licensed attorney is presumed competent. SeeVaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164; State v.Calhoun (1999), 86 Ohio St.3d 279, 714 N.E.2d 905. Further, reviewing courts must refrain from second-guessing strategical decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545,558, 651 N.E.2d 965.
 {¶ 22} Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning the trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See Strickland, supra.
 {¶ 23} In his first assignment of error, appellant sets forth five acts or omissions on the part of his trial counsel which he claims amount to ineffective assistance of counsel. First, appellant alleges his trial counsel brought out appellant's prior criminal record. Second, appellant maintains his trial counsel conceded his guilt on one count of the indictment. Third, appellant claims his trial counsel failed to request a lesser-included offense instruction. Fourth, appellant maintains his trial counsel failed to challenge the pretrial identification procedure used to identify him. Finally, appellant maintains the trial counsel failed to seek severance of the charges in the indictment for the purpose of trial. We address each of appellant's arguments in turn.
 {¶ 24} Appellant first maintains his trial counsel elicited prejudicial evidence regarding his prior criminal record. We disagree with this assessment. Appellant directs our attention to page 172 and 173 of the trial transcript. During cross-examination of Sgt. James McCall, appellant's attorney elicited the fact appellant had escaped from a halfway house. The following exchange took place on the record:
 {¶ 25} "Q. Why did it take you four days after this event to put together this and then present State's Exhibit No. 1 to these people?
 {¶ 26} "A. When Mr. Boyer first mentioned that it could possibly be James Hanning, I got the tag number off the car. It come back to a lady in the Dayton area by the name of Laura Camplo or something like that. I tried to make contact with her. I had Dayton PD go to her house. No contact.
 {¶ 27} "I checked Mr. Hanning to see where he could be currently located at. They said he was in a halfway house in Lancaster, so I went there and they said he had been moved to a halfway house in Dayton. I called there, and they said that he had walked away. I put the two together, the Dayton car tags and him being there. That's when I made up the photo lineup." Tr. at 172.
 {¶ 28} The transcript demonstrates the answer given was not directly responsive to the question posed. Certainly, it does not appear appellant's trial counsel attempted to elicit the information appellant walked away from a halfway house before the jury or that any reasonable attorney could have expected such a response given the nature of the question.
 {¶ 29} Further, the sergeant investigator never discussed the reason for which appellant was in a halfway house, or whether appellant had permission to walk away from the halfway house. We agree with appellee the fact appellant was in a halfway house does not necessarily mean he has a prior record. Accordingly, we do not find trial counsel's performance was ineffective in this instance.
 {¶ 30} In appellant's second and third allegations, he maintains his trial counsel conceded his guilt in closing argument and that he failed to request a lesser-included offense instruction. In his brief to this Court, appellant maintains these decisions were made without appellant's consultation or approval.
 {¶ 31} There is nothing in the record to indicate appellant was not consulted or did not approve of these decisions. Nevertheless, our review of the record indicates these decisions were sound trial strategy decisions. At trial, Mr. Fiore testified he witnessed appellant breaking into his home by kicking at the door, and that he followed appellant's vehicle until it was stopped by the police. Mr. Fiore identified appellant as the driver of the vehicle. Appellant's trial counsel's decision in conceding some criminal activity at the Fiore residence could reasonably bolster his credibility with the jury in arguing for an acquittal on the remaining two counts at the Boyer residence. Further, by choosing not to request a lesser-included offense instruction with respect to appellant, trial counsel could have hoped to obtain a full acquittal of the more serious attempted burglary charge. That is to say the decision may well have been trial strategy.
 {¶ 32} Furthermore, we are not convinced there exists a reasonable probability the jury's verdict of guilty on the attempted burglary charge would have been different had a lesser-included offense charge instruction been given in light of all of the evidence presented. Accordingly, we find no ineffective assistance of counsel based upon these two claims.
 {¶ 33} In appellant's fourth allegation, he maintains his trial counsel failed to challenge the pretrial identification. At trial, Deputy McCall testified that four days after the incident he showed Kim Kesman the photo array and stated "* * * one of the subjects in the photo lineup could possibly be the suspect." Deputy McCall also showed the same photo array the same photo array to Richard Neff ten days after the incident. Mr. Neff testified he was instructed to identify, if he could, the person he saw at the Boyer residence.
 {¶ 34} We find nothing unduly suggestive about these statements. The entire purpose of a photo lineup is to attempt to identify a suspect in a crime. Further, both Mr. Neff and Ms. Kesman positively identified appellant from the photo array and at trial. Both witnesses testified they closely observed appellant in the car. Appellant does not claim the photos were dissimilar or that the photo lineup was arranged in such a way as to suggest him as the perpetrator. Accordingly, we find appellant cannot demonstrate his trial counsel's performance was deficient.
 {¶ 35} Finally, appellant maintains his trial counsel's performance was deficient where he failed to ask for severance of the counts in the indictment. Crim.R. 8(A) permits the State to join two or more offenses within an indictment if they are of the same or similar character. However, Crim.R. 14 permits a defendant to have two dissimilar cases severed for trial if he can establish prejudice to his rights. In his brief to this Court, appellant maintains the evidence of the Fiore incident was overwhelming because Mr. Fiore watched appellant kick in his door and subsequently followed appellant until he was apprehended by the police. Appellant maintains this evidence could only taint the jury regarding the Boyer incident, even though there was no physical evidence to tie him to that crime. We disagree.
 {¶ 36} Two witnesses saw appellant at the scene of the crime and one witness testified he watched appellant carry items from the Boyer residence and place them into the car appellant was driving. Further, Mr. Boyer told police he suspected appellant was the perpetrator. When the police prepared a photo lineup including the appellant, both witnesses chose appellant as the perpetrator. A trial court would not have abused its discretion in determining the offenses were of the same or similar character and the evidence as to each was simple and direct. See State v. Lott (1990), 51 Ohio St.3d 160. Further, it may also have been the trial strategy to keep both cases together. As discussed above, by conceding appellant's involvement in the Fiore crime, appellant's trial counsel and, appellant himself, could reasonably hope the jury would find appellant more credible in claiming he had no involvement in the Boyer incident. Accordingly, appellant cannot demonstrate his trial counsel's performance was deficient.
 {¶ 37} Appellant's first assignment of error is overruled.
 II. {¶ 38} In appellant's second assignment of error, he maintains his convictions for burglary and theft, counts two and three of the indictment, were against the manifest weight of the evidence. We disagree.
 {¶ 39} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 40} Appellant argues the charges arising out the Boyer incident hinged on the testimony of Ms. Kesman and Mr. Neff. Further, appellant maintains these two witnesses contradicted each other and therefore, their testimony was unbelievable. We disagree. Upon our review of the evidence, as set forth in the Statement of the Case and Facts, supra, we find there was competent, credible evidence going to each element of both the burglary and theft charges.
 {¶ 41} Mr. Boyer testified he gave no one permission to take items from his home or to enter his home in his absence. When he arrived home, he found one of his doors had been kicked in, causing significant damage to the door. Upon further inspection, Mr. Boyer noticed a number of personal articles had been removed from the house. Additionally, both Ms. Kesman and Mr. Neff testified they saw appellant removing items from the Boyer residence. Further, both Ms. Kesman and Mr. Neff identified appellant as the individual carrying items from the Boyer residence in a photo lineup and at trial.
 {¶ 42} We find there was sufficient, competent, credible evidence upon which the jury could determine appellant was guilty of both burglary and theft.
 {¶ 43} Accordingly, appellant's second assignment of error is overruled.
 III. {¶ 44} In his third assignment of error, appellant maintains he was deprived of his right to effective assistance of appellate counsel. Appellant maintains his first appointed appellate counsel failed to file a timely brief and as a result, this Court dismissed appellant's direct appeal. However, subsequently, appellant obtained new appellate counsel and this Court permitted the reopening of the direct appeal. Because we now review arguments appellant would have made on direct appeal in this reopened action, we find appellant's third assignment of error to be moot.
 {¶ 45} The March 29, 2001 Judgment Entry of the Perry County Court of Common Pleas is affirmed.
By: Hoffman, P.J. Farmer, J. and Wise, J. concur.
topic: IAC, MWE burglary theft, IAC appellee counsel.